Case number 17-1089, Santa Fe Discount Cruise Parking, Inc., DBA, EZ Cruise Parking, et al. Petitioner v. Federal Maritime Commission, et al. Mr. Morrissey, the Petitioner, Mr. Shakley, the Respondent, and Mr. Brown for the Intervening. Thank you. Good morning. My name is Gerald Morrissey, a partner at Winston & Strong, counsel for the Petitioners in this case, Santa Fe Discount Cruise Parking, and Sylvia Robledo in their DBAs, and I'll just refer to them here as parking plaintiffs or parking petitioners. I've noted to the clerk that I'd like to reserve three minutes for rebuttal. This appeal is about the proper administrative adjudication of alleged rate discrimination prohibited under the Shipping Act of 1984, and specifically the proper application of the Federal Maritime Commission's precedent in Surrey's Marine Terminal v. Maryland Ports Administration and the application of that undisputed precedent to the claims in this case. The parties here are all ground transportation companies that operate at the port in the cruise terminal in Galveston. They all pay, they're all charged by the port for access to the terminal. The service- And who do you want to be compared to? We want to be compared to other ground transportation companies, and whatever rates that we would qualify for as a ground transportation company, we want to have access to those rates. Other shuttle buses? Both other shuttle buses. And if the distinction between the limousine and the shuttle bus is not a distinction that has a justified transportation justification, then we would want to have access to whatever rates are lower. And in this case, we are- That would be the taxis and limos, right? Taxis and limos, that's correct. Because if you're compared to the other shuttle buses, it went along for 9 or 10 years without objection to what was going on, right? Yeah, I mean, that's correct. And what happened in this case is that what went along for a number of years changed dramatically when the port wanted to- they promulgated a tariff to raise the negotiated rate 260% from $8 per parking space to 28 and changed, which- But then it went to a per-trip fee, right? Yes. We filed a complaint. They rescinded the tariff, and it didn't just go back to what it was before. It changed to something different again. But if it had gone back to what was before, what would your reaction be? Well, if it had gone back entirely to what was before, probably our reaction would have been that it would have been acceptable  that what was before was distinct between your shuttle buses and taxis. Our client had-my client had a different basis for paying for their fee before. That's correct. However, having brought the case and being faced with serious financial repercussions for the way that the port was charging, it was apparent that what the port had been doing in other respects was not in compliance with the Shipping Act. I guess part of the confusion-this will be for the commission too and for me-is I do see that you argued the ALJ, and the ALJ said you're not similarly situated to taxis and limos. And then it gets, for the commission, kind of bollocked up, I guess, is one term for it. Right, yeah. And we're trying to figure out now-I mean, I understand why there would be a distinction, although you would challenge this between shuttle buses on the one hand and taxis and limos on the other, but maybe there wasn't sufficient explanation of that by the commission as compared to the ALJ. So, yeah, I mean, once the commission-and in this case, rightfully so, under the law-said, wait a second, the similarly situated element is not required here, because they found that the service being provided, access to the terminal, doesn't differentiate at all on the basis of transportation-related characteristics. It's access. The passengers are the same. So the rates, to the extent that they're made available to one user providing access, should be uniformly offered to other users getting access. So once they did that, what happened to the commission? The commission then only applied that analysis to one other class of user and not all the classes of ground transportation company users. And having found that there was no difference in service among them, they should have applied the rates available to limos and taxis to the rates that would have been available. So when they compared just the rates under Note C and Note D, they were only comparing the off-terminal parkers to other off-terminal parkers like hotels. They did not compare limos and taxis. I mean, I guess you're going to dispute this, but it would seem like ports would routinely distinguish, say, taxis on the one hand from shuttle buses on the other around the country. They absolutely might do that, Your Honor. Here's what the commission didn't do. What the commission did was they decided that the injury element was not satisfied because with respect to one class, it wasn't clear that we were better off with respect to one class. The other class, they affirmatively found some of those payers paid nothing and some of those payers paid less. If they had compared that, it's axiomatic that we would have performed better to some extent. They didn't find on the basis that it was a transportation justification for taxis and limos. They could do that. And under the burden-shifting framework in Saria's terminal, that would be the next step. So if there is – So what's the end game for you? Because if it goes back, isn't it pretty obvious they will find that there was a justification for treating taxis differently from your buses? I think there is some evidence that there was a transportation justification given consideration for taxis. I do. There was no evidence for the change in the 2014 tariff change to make taxis above eight passengers complete with any taxi exempt. There is no evidence about that. And there's no evidence, even at the ALJ level, there's no evidence that limousines were somehow accorded a different treatment or similar to taxis. ALJ just said, well, I think limousines are like taxis. That's all. Well, it is. Isn't it the number of passengers? Well, so the definition of limousine in the tariff and the definition of shuttle in the tariff, they're both – the definition is they're both vehicles, not more than 15 passengers. The only distinction is one is a luxury sedan and the other is a van-type vehicle. You know, the commission didn't get to trying to ask the port, well, what's the transportation justification for the difference there, luxury vehicle versus van? And I don't think there is one, but that would be the next step, and we'd like to get to that, and I think the commission should get to that. Should they go back and reexamine element one? I'm sorry? Should they go back and reexamine element one? I think the element one was rightfully satisfied here because the service being provided – I don't even really know what the service actually is. I think it's just a fee to get through the gate, and they raise money to do that. That's not really – you know, the substance of that isn't an issue in this appeal, but there's no difference in the service being provided, so I think they decided that correctly. I'm having a little trouble understanding your argument that you don't have to meet prong one, which the commission agreed with. Prong two, you just show different charges. And then I think under your theory, prong four disappears as well because you just say different charges show we're injured. And so all you have to do is show different charges. So under your theory, combined with the commission's rejection of prong one in this situation, all you do is show up and say here's a list of charges, we're different, and the burden shifts. Am I right about that? You are right. But in a way that the – the way that the respondents kind of styled the argument that we were saying that, well, you know, injury is not – you don't have to show injury, we take issue with that. I mean, for the purpose of the burden shifting framework, it's quite apparent in Ceres that that's what's happening, that once the determination is made that it's a service that should – excuse me, it's a rate that should be provided to others, you don't have to have an additional showing of injury because you're injured. No, but so we're down to a one prong test on your side and one prong on theirs. That's not what the commission said. For the purposes of the burden shifting, the fourth prong, that injury – I mean, ultimately, all four of these elements need to be satisfied on the merits. So – No, but you just told us that if we don't have to show that we're even similarly situated, let alone competitive, all I've got to do is show here's my list of different charges for something that qualifies, as the commission found here, for – should be a universal charge. And then by just pointing to the fact that someone's got a lower charge, you'll inherently, automatically satisfy the injury requirement, will you not? Yes. Yes, that's correct. Okay, so there's just one prong on your side, different charges, and we're not in the lowest one, and then they have to justify. Is that your understanding? Well, for the purposes of part of the claims here, I mean, we are not – I mean, the comparison to the other off-terminal parkers when the commission obliged in the ALJ's damage analysis as to the one class, that's not being appealed here. And that's an application of, okay, you point to a difference, and here that difference does not demonstrate that there – there wasn't a better rate. That's what the commission concluded. To Judge Millett's question, I think your answer is just yes. If there's differential treatment of different vehicles, they have to justify it. Yes, I think the answer is yes. I was trying to qualify it a little bit. And it's pretty simple. Well, I mean, I assume they'll come in, as I was saying in my questions, and say taxis are different for the following reasons, limos are different for the following reasons. That's it. Right, yes. And your concern is that really wasn't done in your view. We'll hear from them. That's correct. The ALJ did it at prong one. At prong one, yeah. At prong one. But they'll probably do something similar at prong three. Yes, and having done it at prong one and then relying on it, then it wasn't done as to the limos and taxis. Right. I was just wanting to point out that the fourth prong is relevant in that ultimately at the end of the day, it's a necessary element to the whole cause of action. Yes. The burden shifting, yes, I agree that it does devolve into one. Go ahead. What is the timeframe for your claim? Are you challenging just the 2014 tariff? Or there's a lot of talk about enforcement. You were in before that even took effect talking about disparate enforcement, so I don't even know what the timeframe is. It is confusing in the record, but the timeframe is both. There are elements of the claim that are between the 2007 and 2014 tariff, and there are elements that are post-2014 and that are still ongoing with respect to, for example, the complete exemption for taxis of any size. And then the other thing I just don't understand is how you can have this litigation here and separate litigation going on in the Southern District of Texas, where you're raising these claims and some additional claims. And then you went there and you got essentially the equivalent of a preliminary injunction that locks in place the very disparate treatment that you're arguing to us is unlawful. Well, I'm not counsel for that case, but I understand. Well, it's the same client. Yeah. That case is that they were utilizing their right to pursue an injunction, which is allowed in concert with the Shipping Act, and they obtained it. There's more than that. There's a complaint that has a whole bunch of additional claims, both under the Constitution and there's some other statutory ones. I mean, I'm sort of figuring out who should even go first here. They've already issued an order in that case. It's a very confusing scheme in which there's – I get that Congress says you can go get an injunction, but they're doing a lot more than just a temporary injunction there. I'm sorry, Your Honor. That case is state, so nothing's been going on in that case. It's just the injunction. Okay. We'll give you some time on rebuttal. Thank you. Thank you. May it please the Court, William Shakely for respondents. I'd like to note that we are splitting our time with interveners and would like to reserve four of our ten minutes for them. This is, as Your Honor noted, this is somewhat of a novel case. As petitioners are arguing injury based on different treatment that they originally expressly sought from the port, received, and seemed content with for almost a decade. The Commission correctly determined that they failed to establish such injury, and on appeal they've raised some new arguments that the Commission did not have – They really knew? I mean, the taxi cab limo argument, I do see that raised in their exceptions from the ALJ decision to the Commission. They noted that the taxi cab limousines were charged a lower rate, but in their exceptions to the ALJ's injury determination, they did not argue, as they could have and probably should have, that the ALJ erred in the injury analysis in only comparing the rates that were assessed for shuttles, like hotel shuttles, under the NOTC general regime with what they paid under the off-port parking regime. Your brief complained that they're now raising arguments about limos and taxis. In terms of calculating the injury, I'm sorry, Your Honor. I don't know what you mean by in terms of calculating the injury, but let's bracket that. They, I thought, raised limos and taxis in their – repeatedly, at least, in their exceptions brief to the Commission. Yes, Your Honor. They did discuss the different treatment, the different fees for taxi cabs and limousines. And what was the Commission's explanation, if any, about limos and taxis? For the different treatment problem, the Commission noted that all other ground transportation companies, including taxi cabs and limousines, were subjected to a general fee regime, while petitioners were subjected to a fee regime that was based on the number of parking spaces in their lots. And in the injury determination, the petitioner's original argument with respect to injury – There's clearly injury as compared to the taxis and limos, isn't there? Well, the argument that they raised to the ALJ, and then in their exceptions, was that they were subsidizing the benefits received by taxi cab and limousine companies. While denying that prong one is in the case, aren't you really relying on prong one? It sounds to me as if you're saying they're not similarly situated, although the Commission below said we don't have to look at that because everybody agrees they're similarly situated. Aren't you saying they're not similarly situated when you give the answer you gave to the Chief Judge and to the Presiding Judge? Well, I think that with the Commission, the different treatment that the Commission focused on wasn't necessarily the different rates charged to the general regime. It was the different treatment between, on one hand, off-court parking user parking space fee-based regime and the general regime for other ground transportation companies based on the vehicle type. That sounds to me like you're saying they're not similarly situated. Didn't the Commission err by dropping prong one out of the case? I don't think that the Commission examined whether the different rates in the Note C general regime were represented in reasonable preference or different treatment. That was a separate claim that petitioners had alleged when they were subjected to the 2014 schedule. I assume that you don't want to answer the question. I won't put it again. The question I have reading all this is the limos and taxis thing somehow got lost in the shuffle. Shouldn't we send it back to the Commission to explain whether it's prong one, prong three? It doesn't matter to me, but they need to explain limos and taxis versus this. There probably is an easy explanation, but I don't know that we have it. Why shouldn't we do that? Because the Commission did address the arguments that they raised with respect to the injury caused by the different treatment between taxicabs and limousines. That was their argument that they had essentially subsidized the activities and the benefits that those companies received from getting access to the port. The Commission correctly determined that they had failed to show any sort of subsidization because their rates have remained consistent through the entire period regardless of what taxicabs or limousine companies paid. That sounds like it could be a non sequitur. Just because they've been the same doesn't mean they're not different. I think that the Commission relied... The same over time doesn't mean they weren't different as to the two classes, is what I meant. Correct, but they failed to allege that what the rates they paid were in any way based off those lower rates or that they were somehow subsidizing those other users. They argued a lot that they were subsidizing those other users. That's what they argued repeatedly in their exceptions and elsewhere was that they were subsidizing, which is just another way of saying I'm getting charged more than them for doing the same thing. Yes, Your Honor, but I think that the Commission respectfully looked at that differently. They were looking at the limousines and the taxicab companies and I think the Commission viewed subsidy as we are paying more so that they can pay less, not a mere difference in the rates that were being paid. Yes, but in the exceptions brief, the whole sections, for example, the initial decision erroneously finds that complainants have not proved by a preponderance that the Port unreasonably gave preferential treatment to taxicabs, limos, and buses. It's just a preferential charge argument as I saw it. Well, and I think what the Commission generally looks for are particular errors in the ALJ's decision that the parties identify on their exceptions and in this case, with respect to the injury element, they didn't argue that the ALJ erred in how the ALJ conducted the injury analysis with comparing the shuttle bus rates compared to the general regime with what petitioners paid under the off-court parking user regime. Okay. Thank you. Thank you. Good morning. Good morning. May it please the Court. My name is Anthony Brown. I'm with the firm McLeod Alexander Palin Apfel in Galveston, Texas. We represent the Board of Trustees of the Galveston Wharves, which we also know as the Port, and the entity GPFC. If the fact that a party claims preferential or prejudicial rates is an injury, then we only have one element. What the plaintiffs or petitioners framed their argument all along was they mentioned the different rates. They talked about taxis, limos, and hotel shuttles. But they framed their injuries beginning at page 26 of their brief to the ALJ that the fees they were charged were in excess of their relative use of the terminal. That was their injury argument. Okay. They said that those fees, if they were making the argument that because they were being treated, they were injured by not being charged the same zero rate for access, that taxis were being charged. That sounds like a waiver argument on your part. It does to a certain extent. If you're charged, say, $8 per month per spot, and taxis are charged zero, isn't that injury? If they are, well, it's an injury if you claim that injury. So I guess it is, in a sense, a waiver argument. Right. And so that's why the commission addressed the claims that were brought before it. There's a lot of writing and opinions in this case. It just seems to me like it comes down to, yeah, of course we treated limos and taxis differently, is what you would say. But it's not fully explained in the commission's decision. This is the problem. The issue is that the port can't assess fees on taxis directly. I have to go to city council. It's regulated. That might be a very good reason for it, then. And we have an election in May, and our city council, two spots are unopposed, and it would save $10,000 to take those off the May ballot. But they left it on so that everybody could exercise their right to select that one option. No writing. Taxes is always about something, right? Right. So bottom line is that relies on another entity doing that, if requested. And then the fact that the part that is relied on to show that there's no competition, the phrase on page 1271 in series that basically states that there's a competitive relationship if rates are geared to transportation factors and differing characteristics of commodities. But if there's no transportation or if there's no competitive relationship based on transportation factors, the respondent has to come back and demonstrate that the differential is supported by transportation factors. That's kind of prong one or prong three. Right. And it's conflated. In this case, our longshoremen down in Galveston carry the bags. And their favorite line is that in our port, the cargo tips. So the cargo, the commodity, granted it's people. But there's a completely different purpose for taxis versus shuttle buses. And the evidence we have, the affidavits and everything, was replete that we don't have enough taxis now. So once again, shouldn't the commission have taken up the question of prong one, the four-element test, rather than saying that it wasn't in the case? It sounds as if everybody that comes up here says they are not similarly situated. Are there not in competition? It sounds like prong one could be an issue. Is it correct that that should just have fallen out of the case and not been considered? Or is that an error? I think either under prong one, we're not in a competitive relationship, or under prong three, there were obvious business justifications for the classification. So you went under one or three, but the commission did it on four. Right. They just basically. Shouldn't we send it back to get them to explain? We're not supposed to affirm commission decisions on bases other than what the commission used. Well, the commission said, based on what, and that goes back to the waiver. Based on what was presented, there was no evidence to support the claim of injury. Okay. Thank you very much. Thank you. We'll give two minutes for rebuttal. Thank you. Thank you. Why weren't they right when they said, based on the evidence you presented? We're skipping over all these other prongs, even assuming you went on all the other prongs. This isn't as though you were charged 20, they were charged 10. Different formula were used. And when we map that formula out and do the math at the end of the day, under the evidence you provided, lo and behold, you're not paying more. Why isn't that a perfectly justifiable disposition? As to the one class of other user to which that analysis applied, that may be. But that analysis does not apply to the other two classes of users, based on the uncontested facts of the case. To be fair to the commission, I think you would have to admit that the heart of your argument was, first of all, you didn't even try to get out of prong one. The commission did that on its own. And you spent a lot of time arguing about hotels versus off-port parking. Probably because taxis are really different. And so it's a little bit of switcheroo on the commission here, complaining about the evidence. Well, we took exception directly to the ALJ's finding on series element one. I mean, that's clear in the exceptions that we did. On the ground that series shouldn't apply at all? That's not how I read your exception. The ALJ's findings said we were not similarly situated. Right, but you didn't say it shouldn't apply at all. Well, that's the impact of that. Right, but the commission said we don't even analyze it in a case like this. And that's different than saying it was satisfied or not. I don't think so, no. The analysis is series element one would generally apply in a series rate type case. Series element, according to the commission's case law in series and other cases, when the service being provided is such that it doesn't differ on the basis of transportation characteristics, that series element one, whether you call it it doesn't apply or it's satisfied, it's really the same treatment, it's just some semantics. Well, no, it's actually very different. I mean, if it applies and then you want to attack this, you know, there is substantial evidence to support their conclusion, that's one type of analysis. And it doesn't apply at all is a different type of analysis, at least from the perspective of a viewing court. I get it at the end of the day for you, as long as you get through that prong, you're happy. I think it would be fair to say, then, that the series element one always applies in the sense that it must be looked at. But when the case fits in a certain group of cases that this case fits in, as the commission did find, where the service does not differ on the basis of these transportation characteristics, then the element is satisfied. I hate to ask this this late in the case, but what exactly would you say is the service we're talking about here? You know, Your Honor, I really don't know what the service is. I don't think – No wonder I don't know. Yeah, I don't think there really is a service in the sense – Why is it a passenger delivery? You said passenger cargo, it's passenger delivery. Well, they're not delivering the passengers. They're letting the passengers through the gate. It's a – Delivering passengers to the port. What do you call that when I was maybe in college and you go to a show, you have to pay the fee with your wallet? Cover charge. The cover charge. I mean, it's kind of like a cover charge to get to the cruise. I mean, that's – it's a service in a sense. But that's what I think it is for. Okay. Thank you very much. The case is submitted. Thank you.
judges: Kavanaugh, Millett, Sentelle